ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| ELIGIO JAVIER MARTÍNEZ MATEO<br><br>Apelante<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY HACIENDO NEGOCIO COMO MAPFRE PR<br><br>Apelada | **KLAN202300974** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Ponce<br><br>Civil Núm. JD2022CV00588<br><br>Sobre: Ley Núm. 44 y 100; Daños y Perjuicios; Despido Injustificado bajo la Ley Núm. 80; Procedimiento Sumario Bajo La Ley Núm. 2 de Reclamaciones Laborales |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de diciembre de 2023.

Comparece ante este foro el Sr. Eligio Javier Martínez Mateo (señor Martínez o apelante), mediante un recurso de *Apelación* y nos solicita que revisemos la *Sentencia* notificada el 23 de octubre de 2023 por el Tribunal de Primera Instancia, Sala de Ponce. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por Mapfre Praico Insurance Company h/n/c Mapfre PR (Mapfre o "parte apelada"). Consecuentemente, el foro primario desestimó la *Querella* instada por el apelante.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

**I.**

El 27 de octubre de 2022, el señor Martínez presentó una *Querella* contra Mapfre por alegado despido injustificado, y discrimen por impedimento físico o mental, mediante el procedimiento sumario laboral.[1] En síntesis, el apelante alegó que, debido al exceso e intolerable volumen de trabajo, desarrolló padecimientos médicos, lo que lo llevó a solicitar un acomodo razonable. Sin embargo, sostuvo que aun cuando Mapfre conocía sobre las condiciones médicas y tratamientos que recibió, no obtuvo la concesión de un acomodo razonable. Por lo tanto, expresó que el despedido fue de manera discriminatoria e injustificado.

Luego de varias incidencias procesales, el 28 de julio de 2023, Mapfre presentó *Moción de Sentencia Sumaria*, mediante la cual sostuvo que no existe controversia real y sustancial de hechos materiales. En esta, desglosó un total de ciento diez (110) hechos incontrovertidos, entre ellos, los siguientes:[2]

[…]

4. El puesto ocupado por el Sr. Martínez cuando comenzó a trabajar en MAPFRE fue el puesto de tasador y su supervisor era el Sr. Manuel Ortega.

5. El Sr. Martínez comenzó en su puesto de tasador en agosto de 1999 en la sucursal de Mayagüez.

[…]

8. Las funciones del puesto de tasador consistían en la tramitación de una reclamación una vez se recibía el informe de accidente de vehículo y conllevaba a ver la gestión para contactar al cliente. Una vez se hacía el contacto y la coordinación para la inspección, pues iba al lugar donde estuviese el vehículo, realizar una inspección, tomar nota de los daños y luego

---

[1] *Querella*, anejo II, págs. 30-35 del apéndice del recurso.
[2] *Moción de Sentencia Sumaria*, anejo III, págs. 35-264 del apéndice del recurso.

se pasaba a realizar e estimado de los daños. Luego se hacía un acuerdo de reparación con el taller y se le refería ese estimado al ajustador para que completara el proceso de reclamación.

[…]

15. Durante su empleo, el Sr. Martínez recibió políticas y manuales de empleo.

16. El Sr. Martínez acusó recibo de varias políticas de MAPFRE incluyendo: la Política de Hostigamiento Sexual y Política de Vestimenta, Manual de Políticas y Procedimientos Informáticos, la Revisión del Manual del Empleado del 2006, Política de Asistencia y cambio en el manual de empleado del 1 de diciembre de 2009.

[…]

26. En el mes de marzo de 2018, se le comunicó oficialmente a todos los tasadores y ajustadores que MAPFRE estaba en un proceso de fusionar ambas posiciones y crear un solo puesto de ajustador/tasador.

27. En el año 2019, MAPFRE hace una fusión entre dos posiciones. Creó entre estas dos una sola, la posición Ajustador/tasador.

28. El Sr. Martínez tenía la licencia de ajustador desde el 2014 y esa licencia requiere que se renueve cada dos (2) años.

29. Para poder ejercer la posición de ajustador es requerido poseer licencia de ajustador, pues así lo exige el Comisionado de Seguros.

30. Para poder ejercer la posición de tasador no hay que tener una licencia.

[…]

36. El querellante renovó su licencia debido a que fue solicitado por el Sr. Guillermo Morales, Supervisor de Tasadores en MAPFRE.

37. A los demás empleados que tenían la licencia de ajustador, también se les solicitó que renovaran la licencia.

[…]

45. En marzo de 2021, se les notificó a todos los empleados del puesto de ajustador/tasador sobre las bonificaciones que estarían recibiendo y el nuevo "pay plan" del puesto.

46. En abril de 2021, se les informó a todos los empleados de que la fusión del puesto había sido completada por Recursos Humanos y que se le estaría enviando la nueva descripción de puesto.

47. En junio de 2021 se les envió a todos los empleados la descripción final del puesto de ajustador/tasador.

48. Al querellante le tocaba renovar su licencia para el mes de octubre del año 2021.

49. La Sra. María de Lourdes Rodríguez, supervisora de reclamaciones y supervisora del querellante en ese momento, le solicitó al querellante que renovara su licencia de ajustador antes de octubre de 2021.

[…]

55. El 7 de septiembre de 2021, el querellante le contestó a la Sra. María de Lourdes Rodríguez que decidió no renovar la licencia de ajustador de autos, por tal razón, no estará tramitando la matrícula para los cursos de educación continua que requiere la licencia. No indicó las razones de su decisión.

56. El querellante no quería renovar la licencia según éste por la carga de trabajo que tenía.

[…]

60. El 21 de octubre de 2021, la Sra. Karen Hernández mediante correo electrónico, con carta anejada, le contestó al querellante sobre su posición de no renovar su licencia de ajustador.

61. En dicha carta, se le solicitó al querellante que presentará evidencia médica sobre su posición de no renovar la licencia de ajustador por su salud, según éste indicó.

62. La carta también explicó que se le había dicho la importancia de la renovación de la licencia de ajustador como requisito para el puesto. Además, se le indicó que se solicitaba la información médica adicional para poder determinar si el querellante era una persona cualificada bajo la ley y la procedencia de un acomodo razonable.

[…]

91. Luego de recibido el informe, el 9 de febrero de 2022, MAPFRE le contestó al querellante sobre su solicitud de acomodo y

le indicó que luego de examinar la información provista por el Dr. Caro y el acomodo solicitado, incide en las funciones esenciales de su puesto, por lo que el querellante no era un individuo cualificado bajo la ley al no poder realizar las funciones esenciales de su puesto de ajustador/tasador. No obstante, MAPFRE realizó un inventario de puestos vacantes y le ofrece las plazas vacantes de Hojalatero y "Detailer" disponibles que había en la compañía y para las que este cualificaba.

[…]

95. El 15 de febrero de 2022, Wanda Rosario le envía un correo electrónico al querellante, el mismo fue recibido por éste; en el cual indica que debido a que no aceptó las alternativas ofrecidas, se tenía que reincorporar a su puesto de ajustador/tasador, cumpliendo con el requisito de la licencia del puesto y que se debía presentar a trabajar el 21 de febrero de 2022.

[…]

98. El 2 de marzo de 2022, la Sra. Wanda Rosario le envió un correo electrónico al querellante.

99. Dicho correo electrónico contenía un anejo de una carta del Sr. José de la Mata, mediante la cual indicaba que se ha determinado terminar la relación de empleo, porque el querellante debió reportarse a trabajar el 21 de febrero y que no lo había hecho. Además de que no se había comunicado con la compañía.

[…]

Así las cosas, Mapfre alegó que el señor Martínez no fue despedido de su empleo, sino que éste abandonó su puesto al no reportarse a trabajar, por lo tanto, la reclamación bajo la Ley Núm. 80, se debía desestimar. De otra parte, sostuvo que el apelante falló en establecer su caso *prima facie* de discrimen bajo la Ley Núm. 44, puesto que, éste conocía que para ocupar la posición de ajustador/tasador, era requisito poseer la licencia de ajustador. A su vez, que no pudo demostrar que con o sin el acomodo razonable, era una persona

cualificada para poder realizar las funciones del puesto. Por consiguiente, solicitó fuera declarada con lugar la moción de sentencia sumaria.

En respuesta, el 11 de septiembre de 2023, el señor Martínez presentó *Réplica a "Moción de Sentencia Sumaria"*.[3] Mediante la cual destacó que las alegaciones de parte de Mapfre, al alegar que no hubo un despido, sino que el apelante abandonó su puesto, además que, no estaba cualificado para las funciones del puesto y que le resultaba oneroso la solicitud de acomodo razonable, son irrazonables y arbitrarias. El apelante, sostuvo que proveyó razones de salud, tanto mental, como emocional para su solicitud de acomodo razonable. Por lo tanto, alegó que aún existe hechos esenciales que están en controversia, y lo que procedía era declarar no ha lugar la moción de sentencia sumaria presentada por Mapfre.

El 22 de septiembre de 2023, Mapfre presentó *Réplica a Oposición de Sentencia Sumaria*.[4] En esta, reiteró su solicitud de sentencia sumaria, ya que, no hay hechos materiales incontrovertidos. El 12 de octubre de 2023, el señor Martínez presentó su *Dúplica a Réplica a Oposición de Sentencia Sumaria*.[5]

Luego de evaluar ambas posturas, el 23 de octubre de 2023, el foro primario notificó la *Sentencia* apelada.[6] Mediante esta, declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por Mapfre. Determinó que, el señor Martínez no logró demostrar por medio de prueba

---

[3] *Réplica a "Moción de Sentencia Sumaria"*, anejo IV, págs. 265-481 del apéndice del recurso.
[4] *Réplica a Oposición de Sentencia Sumaria*, anejo V, págs. 482-494 del apéndice del recurso.
[5] *Dúplica a Réplica a Oposición de Sentencia Sumaria*, anejo VI, págs. 495-496 del apéndice el recurso.
[6] *Sentencia*, anejo I, págs. 1- 29 del apéndice del recurso.

fehaciente que podía desempeñar las funciones esenciales de su actual puesto y que le hubiesen permitido haber solicitado un acomodo razonable.

Inconforme, el 1 de noviembre de 2023, el apelante acudió ante nos y mediante recurso de *Apelación* formuló los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al dictar sentencia sumaria dando por incontrovertidos hechos que de la misma evidencia aportada por Mapfre surge que existe controversia real y sustancial.

> Erró el Tribunal de Primera Instancia al dictar sentencia sumaria sin aplicar el examen de la totalidad de las circunstancias y concluir que el apelante no estaba apto para ocupar el puesto de tasador con acomodo razonable.

El 6 de noviembre de 2023, *Mapfre presentó Moción de Desestimación por Falta de Jurisdicción*, mediante esta, señaló que el señor Martínez no notificó el recurso de apelación a la dirección correcta conforme a las exigencias de la Regla 13(B)(1) del Reglamento de este Foro.

Luego de varias incidencias procesales, y de evaluar las mociones presentadas, el 15 de noviembre de 2023, emitimos una *Resolución* mediante la cual dimos por cumplida la *Resolución* emitida el 7 de noviembre de 2023. Así las cosas, le concedimos a la parte apelada hasta el 4 de diciembre de 2023 para que presentara su alegato.

En cumplimiento con lo ordenado, el 4 de diciembre de 2023, Mapfre presentó su *Alegato en Oposición a Apelación* y solicitó, entre otros asuntos, la desestimación de la *Apelación* por falta de jurisdicción, y en la alternativa, se confirme la *Sentencia* emitida por el foro primario.

A continuación, con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

## II.

### -A-

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, atiende todo lo referente al mecanismo de sentencia sumaria. En específico, dispone que una parte podrá presentar una moción fundamentada "en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada." Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1.

Así pues, la parte que solicite la disposición de un asunto mediante el mecanismo de sentencia sumaria deberá establecer su derecho con claridad, pero, sobre todo, deberá demostrar que no existe controversia sustancial sobre algún hecho esencial. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010 (2020); *Rodríguez García v. UCA,* 200 DPR 929 (2018); *Ramos Pérez v. Univisión*, 178 DPR 200 (2010).

De otro lado, la parte que se oponga a que se dicte sentencia sumaria deberá controvertir la prueba presentada por la parte que la solicita, por lo que deberá cumplir con los mismos requisitos que tiene que cumplir la parte proponente. *Zambrana García v. ELA et al.,* 204 DPR 328 (2020); *Jusino et als. v. Walgreens*, 155 DPR 560 (2001). Además, su solicitud deberá contener una relación concisa y organizada, con una referencia a

los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos. Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b). De igual modo, debe contener la indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. *Íd*. Véase, además: *Meléndez González v. M. Cuebas*, 193 DPR 100, 136 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Una vez las partes cumplan con las disposiciones antes esbozadas, la precitada Regla 36 de Procedimiento Civil requiere que se dicte sentencia sumaria, solamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, págs. 430-434.

Por último, en *Meléndez González et al. v. M. Cuebas*, supra, págs. 116-117, nuestro Tribunal Supremo amplió el estándar específico que este foro debe utilizar al momento de revisar la concesión de una solicitud de sentencia sumaria y estableció que nos encontramos en la misma posición que el foro primario para evaluar la procedencia de una sentencia sumaria. De igual modo, quedó resuelto que nos regiremos por la Regla 36 de Procedimiento Civil, *supra*, y por los

criterios de su jurisprudencia interpretativa. Al así concluir, el Tribunal Supremo resolvió que:

> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y discutidos en SLG Zapata-Rivera v. J.F. Montalvo, supra.

> Tercero, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> Cuarto, y[,] por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas,* supra, págs. 118-119.

-B-

La Ley Núm. 100 de 30 de junio de 1959, según enmendada (29 LPRA sec. 146, *et seq.*) (Ley Núm. 100), prohíbe toda acción discriminatoria de un patrono contra su empleado por razón de edad, raza, color, sexo, origen o condición social. *Hernández v. Trans Oceanic Life Ins. Co.,* 151 DPR 754, 773 (2000). En particular, la referida ley protege a los empleados y aspirantes a empleo contra discrímenes de los patronos o de las organizaciones obreras. *Íd.*

Bajo las disposiciones de esta ley, el reclamante debe establecer un caso *prima facie* de discrimen. *López Fantauzzi v. 100% Natural,* 181 DPR 92, 121 (2011). Es

decir, que el peso de la prueba corresponde inicialmente al empleado. *Íd.*, pág. 122. De este modo, el Tribunal Supremo ha destacado que, cuando un empleado inste una acción al amparo de la Ley Núm. 100, *supra*, deberá demostrar: (1) que hubo un despido o acto perjudicial; (2) que éste se realizó sin justa causa; y (3) algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama." *Íd.*, pág. 123; *Ramos Pérez v. Univisión*, 178 DPR 200, 222 (2010).

Así, corresponde al empleado desfilar prueba en torno a ciertos hechos básicos que configuren la modalidad de discrimen imputada, a fin de que el juzgador tenga, en términos generales, una base racional y motivos para inferir que la acción tomada en su contra fue discriminatoria. *Díaz v. Windham Hotel Corp.*, 155 DPR 364, 387-389 (2001).

Una vez el empleado establece el caso prima facie de discrimen, el patrono podrá rebatirla probando que la existencia del discrimen es menos probable que su inexistencia. *Odriozola v. S. Cosmetic Dist. Corp.*, 116 DPR 485, 502 (1985). Ello podrá hacerlo de tres maneras: (1) derrotando el hecho básico (la ausencia de justa causa); (2) destruir el hecho presumido (que el despido fue por causa de motivos discriminatorios); o (3) destruir el hecho básico y el presumido a la vez. *López Fantauzzi v. 100% Natural*, supra, pág. 124. Dicho de otro modo, debe probar que no se tomó la acción adversa o que existió justa causa para la acción tomada; es decir, demostrar que la acción no respondió a un ánimo discriminatorio.

De rebatirse la presunción de discrimen, el empleado nuevamente tendrá oportunidad de demostrar la

existencia del discrimen, aunque sin el beneficio de la presunción inicial. *SLG Hernández-Beltrán v. TOLIC*, 151 DPR 754, 775 (2000). Es decir, que el empleado tendrá que probar hechos específicos de los cuales surja el discrimen. *Íd*. Sólo si queda probado que el patrono incurrió en conducta discriminatoria contra el empleado, tendrá que indemnizarlo por los daños que ello le hubiera ocasionado. *Mestres Dosal v. Dosal Escandón*, 173 DPR 62, 69 (2008); 29 LPRA sec. 146.

-C-

Entre las legislaciones que regulan el discrimen en el empleo se encuentra la Ley Núm. 44 de 2 de julio de 1985, según enmendada (1 LPRA sec. 501, *et seq*.) (Ley Núm.44), la cual se adoptó con el propósito de garantizar la igualdad en circunstancias en las cuales personas con discapacidad física, mental, o sensorial enfrentan tratos discriminatorios en el empleo. Véase, *Exposición de Motivos* de la Ley Núm. 44, *supra*. Ello, privándole de su oportunidad para desempeñarse y competir adecuadamente en el campo laboral. *Íd*.

En vías de cumplir con el objetivo antes reseñado, el Artículo 5 de la precitada ley prohíbe que tanto las instituciones públicas como las empresas privadas pongan en vigor o utilicen procedimientos, métodos o prácticas discriminatorias de empleo por razón de impedimentos físicos, mentales o sensoriales. 1 LPRA sec.504. Esta prohibición se extiende desde la etapa de reclutamiento hasta los diferentes términos, condiciones y privilegios de empleo, a saber, la compensación, los beneficios marginales y las facilidades de acomodo razonable. *Guardiola Álvarez v. Depto. de la Familia*, 175 DPR 668, 684 (2009).

En lo pertinente al caso de autos, el Artículo 1(b) de la Ley define el "acomodo razonable" como el ajuste lógico, adecuado, que permite a la persona cualificada para el trabajo con limitaciones físicas o mentales desempeñar las labores asignadas a una descripción ocupacional. 1 LPRA sec.501(b). Ello incluye ajustes en el área de trabajo y otros que no representen un esfuerzo extremadamente oneroso en términos económicos. *Íd*. Ese esfuerzo lo define la ley a la luz de la naturaleza y otros aspectos del acomodo, los recursos económicos de la entidad y el tipo de negocio. *Íd*.

Ahora bien, para que un empleado quede cobijado por la Ley Núm. 44, *supra*, y que su patrono esté obligado a brindarle acomodo razonable conforme la ley, el empleado tendrá que demostrar, primero, que es una persona con impedimento según lo define la ley, y segundo, que está cualificado para llevar a cabo las funciones básicas de ese trabajo, con o sin el acomodo razonable. *García v. Darex PR, Inc.*, 148 DPR 364, 385-386 (1999). A estos fines, el Artículo 1(d) de dicha ley, define a una "persona con impedimentos físicos, mentales o sensoriales" como sigue:

> Significará toda persona con un impedimento de naturaleza motora, mental o sensorial, que le obstaculice o limite su inicio o desempeño laboral, de estudios o para el disfrute pleno de la vida y que está cualificada para llevar a cabo las funciones básicas de ese trabajo o área de estudio, con o sin acomodo razonable.
>
> Se entenderá, además, que es una persona con impedimentos bajo la protección de esta Ley, toda aquella persona cuyo impedimento le limite sustancialmente su desempeño en una o más actividades principales del diario vivir; que la persona tenga un historial previo de esa condición o se le considere como que tiene dicho impedimento aun cuando no lo tiene. […] 1 LPRA sec. 501(d).

**-D-**

La Ley Núm. 80, del 30 de mayo de 1976 (29 LPRA sec. 185a *et seq.*) (Ley Núm.80), fue creada con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo. A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justicieros y consustanciales con los daños causados por un despido injustificado. Véase, *Exposición de Motivos* de la Ley Núm. 80, *supra.*; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 424 (2013); *Feliciano Martes v. Sheraton*, 182 DPR 368,379 (2011).

El Artículo 1 del referido estatuto, establece que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo que sea despedido de su cargo, sin que haya mediado justa causa, tendrá derecho a recibir de su patrono una indemnización. Dicha indemnización se conoce como la "mesada" y su cuantía dependerá del tiempo durante el cual el empleado ocupó su puesto y del sueldo que devengaba. Art. 1 de la Ley Núm. 80, 29 LPRA sec. 185a; *Whittenburg v. Col. Ntra. Sra. del Carmen,* 182 DPR 937, 950 (2011).

Por su parte, el Artículo 2 de la Ley Núm. 80, detalla las circunstancias que constituyen "justa causa" para el despido e incluye motivos fundados en la conducta del empleado, así como circunstancias de índole empresarial. Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b). Así pues, en lo pertinente, las causas atribuibles a los empleados que constituyen justa causa

para el despido se preceptúan en los incisos (a), (b) y (c) del Artículo 2 de la Ley y estas son las siguientes:

> (a)   Que el obrero siga un patrón de conducta impropia o desordenada.
>
> (b)   La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
>
> (c)   Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas por el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. […]   23 LPRA sec.185b.

No obstante, a pesar de que la Ley Núm. 80 provee una lista de circunstancias que justifican el despido de un empleado o empleada, la precitada ley no pretende ser un código de conducta limitada a una lista de faltas claramente definidas con sus sanciones correspondientes. *Jusino et als. V. Walgreens*, 155 DPR 560, 573 (2001). A estos efectos, el patrono tiene la potestad de adoptar reglamentos internos y establecer normas de conducta en el lugar de trabajo que estime necesarias para conseguir el buen funcionamiento de la empresa. *Íd*. Los empleados estarán sujetos a cumplir con dichos reglamentos y normas, siempre y cuando éstos cumplan con el criterio de razonabilidad. *Íd*. De este modo, para que las violaciones de las normas del empleo constituyan justa causa para el despido, el patrono tiene la obligación de probar la razonabilidad de las normas establecidas, que le suministró copia escrita de éstas al empleado y que el empleado las violó. *Rivera Águila v. K-Mart de PR*, 123 DPR 599, 613-614 (1942). En cambio, no se considerará despido por justa causa aquel que se hace por el mero capricho del patrono o sin razón relacionada

con el buen y normal funcionamiento del establecimiento. *Srio. del Trabajo v. GP Inds., Inc.*, 153 DPR 223, 241 (2001).

En fin, el principio rector que gobierna el despido por justa causa dispuesto en el Artículo 2 de la Ley Núm. 80, *supra*, es aquel que delimita las circunstancias en que éste se produce. Es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono. *Íd.*

Finalmente, el Artículo 11 de la Ley Núm. 80, *supra*, crea una presunción de que todo despido es injustificado. 29 LPRA sec. 185k. Por ello, el patrono, mediante preponderancia de prueba, debe demostrar lo contrario, es decir, que en efecto hubo justa causa para el despido. *Rivera v. Pan Pepin*, 161 DPR 681,688 (2004); *Delgado Zayas v. Hosp. Interamericano,* 137 DPR 643, 650 (1994); *Rivera Ánguila v. K-Mart de PR,* supra, pág. 610.

### III.

En el caso de autos, el señor Martínez alega que incidió el foro primario al dictar sentencia sumaria, aun cuando hay controversia real y sustancial sobre hechos materiales, por lo que, era necesario la celebración de una vista evidenciaria.

En esencia, el apelante en su recurso alega que fue despedido injustificadamente y discriminado por su condición de salud emocional y mental en violación a la Ley Núm. 44, *supra*. En específico, esboza que Mapfre tenía conocimiento sobre su problema de salud, y aun cuando presentó evidencia médica que no podía renovar la licencia de ajustador fue suspendido de empleo y sueldo. A su vez, alega que la parte apelada, continuó con su

patrón de irracionalidad y descartó la certificación médica preparada por su médico. Sin embargo, esboza que le requirieron una certificación de un médico especialista, que acreditara su condición y las funciones que podía realizar. Así las cosas, señala que presentó el informe de tratamiento, no obstante, que Mapfre concluyó que bajo dicho informe no era un individuo cualificado para realizar las funciones de su posición como ajustador/tasador. Consecuentemente, sostuvo que, al no poder aceptar el nuevo puesto, y no poder dar una explicación al patrono, no retornó al trabajo.

Por su parte, Mapfre arguye que desde el año 2018 la compañía le comunicó a los tasadores y ajustadores que estaban en un proceso de fusionar ambas posiciones, y crear un solo puesto. El 23 de abril de 2021, emitieron un correo electrónico indicándoles que habían culminado el proceso de reclasificación de puesto como ajustador/tasador. Posteriormente, el 23 de junio de 2021, les enviaron el "*Job Description"* del puesto de ajustador/tasador, y entre los requisitos se encontraba tener la licencia de ajustador vigente. No obstante, esbozaron que le requirieron al señor Martínez que renovara la licencia de ajustador, ya que era un requisito para el puesto. Una vez recibieron el informe médico, el cual su médico indicó que no podría realizar múltiples funciones esenciales del puesto, determinaron que no podían ofrecerle un acomodo al apelante, ya que no era un individuo cualificado para propósitos de la Ley ADA y la Ley Núm. 44, *supra*. Añadieron, que el señor Martínez, de igual forma falló en establecer que, con o

sin acomodo razonable, no era una persona cualificada para llevar a cabo las funciones de su puesto.

Conforme el derecho antes expuesto, para que proceda una acción al amparo de la Ley Núm. 100, *supra*, le corresponde al empleado desfilar prueba de hechos específicos que configuren la modalidad de discrimen imputada, con el fin de que el juzgador tenga base racional para inferir que la acción tomada en su contra fue discriminatoria. *Díaz v. Windham Hotel Corp.*, supra, págs.387-389.

De otra parte, cabe precisar que, conforme al precitado derecho, se justifica la terminación de empleo cuando el empleado incurre en una violación reiterada de las reglas y reglamentos razonables establecidos por el funcionamiento del establecimiento siempre que copia escrita de los mismos se le haya suministrado oportunamente. Art. 2(b) de la Ley Núm.80, *supra*.

Finalmente, nuestro Tribunal Supremo en *García v. Darex PR, Inc.*, supra, expuso para que un empleado quede cobijado por la Ley Núm. 44 y su patrono esté obligado a brindarle acomodo razonable, tiene que demostrar que es una persona con impedimento según lo define la ley y que está cualificado para llevar a cabo las funciones básicas de su trabajo. A su vez, que está cualificado para llevar a cabo las funciones básicas de ese trabajo, con o sin el acomodo razonable. *Íd*.

Luego de evaluar el expediente del caso, no cabe duda de que el señor Martínez tenía conocimiento sobre los requisitos para el puesto de tasador/ajustador. A su vez, recibió varias comunicaciones para que renovara la licencia de ajustador, además, que la compañía le ofreció brindar los recursos para completar los cursos

de educación continua que requiere la licencia, aun así, no lo hizo. Incluso, la parte apelada, le comunicó sobre otros puestos vacantes, y para los cual cualificaba, pero de igual forma rechazó, y finalmente, no retornó al trabajo. Por lo tanto, consideramos que el señor Martínez no presentó prueba suficiente para establecer un caso *prima facie* de discrimen, ni despido injustificado, ya que conocía que el puesto que desempeñaba era necesario tener la licencia de ajustador.

En cuanto al discrimen por impedimento emocional y mental, el apelante presentó el informe del especialista médico que Mapfre le requirió. Sin embargo, evaluado dicho informe, determinaron que no era una persona cualificada bajo ley para continuar en el puesto, por lo que, el acomodo solicitado incidía con las funciones esenciales del puesto. A pesar de ello, le ofrecieron dos vacantes, y el señor Martínez rechazó, indicando que no eran una alternativa viable, y solicitaba continuar como tasador.

En virtud de lo anterior, determinamos que el despido del señor Martínez no fue de manera injustificada, ni discriminatoria, por lo que, no proceden las causas de acción presentadas en el caso de autos. Así las cosas, concluimos que el foro primario no incidió al dictar la *Sentencia* declarando "*Ha Lugar*" la *Moción de Sentencia Sumaria* a favor de Mapfre.

Por lo tanto, confirmamos la determinación del foro primario de que no existen controversias sobre los hechos materiales propuestos por Mapfre Praico Insurance Company.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* notificada el 23 de octubre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Ponce.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones